# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs April 4, 2016

## IN RE: ANISTON M., ET AL.

### Appeal from the Juvenile Court for Sevier County
### No. 15000307, 15000308    Dwight E. Stokes, Judge

———————————————

### No. E2015-02076-COA-R3-PT-FILED-MAY 5, 2016

———————————————

This appeal arises from a termination of parental rights. The Tennessee Department of Children's Services ("DCS") filed a petition in the Juvenile Court for Sevier County ("the Juvenile Court") seeking to terminate the parental rights of James W. ("Father") to his children Aniston and Chloe ("the Children").[1] After a trial, the Juvenile Court entered an order terminating Father's parental rights to the Children on the ground of wanton disregard and, also, finding that termination of Father's parental rights was in the Children's best interest. Father appeals, arguing that the Juvenile Court's failure to grant his request for appointed counsel during the earlier dependency and neglect proceeding warrants reversal of the Juvenile Court's order terminating his parental rights to the Children. We hold that any alleged deficiencies in the dependency and neglect proceedings were remedied by the protections afforded by the termination proceeding, and that, in any event, Father was not disadvantaged by any alleged deficiencies. We affirm the judgment of the Juvenile Court in its entirety.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ., joined.

William L. Wheatley, Sevierville, Tennessee, for the appellant, James W.

Herbert H. Slatery, III, Attorney General and Reporter, and, Alexander S. Rieger, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

---

[1] The Children's mother surrendered her parental rights to the Children, and this appeal concerns only Father's parental rights. Aniston was born in 2003. Chloe was born in 2005.

# OPINION

## Background

As the procedural history is central to this parental rights termination appeal, we begin by recounting the relevant procedural events that transpired below. In May 2013, DCS filed a petition for temporary legal custody of the Children. Father was incarcerated at the time. In July 2013, the Juvenile Court entered an adjudicatory order which made no findings regarding Father apart from noting that he was incarcerated. In July 2014, the Juvenile Court entered an adjudicatory order finding, by clear and convincing evidence, that the mother inflicted severe abuse upon Aniston. No findings were made regarding Father. A permanency plan ratification order was entered which noted that Father was incarcerated "for many years to come." In July 2014, pro se Father filed a motion for appointment of counsel and a motion for transport. The Juvenile Court Clerk responded with a letter stating that Father was not entitled to counsel. In March 2015, DCS filed a petition to terminate Father's parental rights. In April 2015, Father received appointed counsel. This case was tried in September 2015. Father made a pre-hearing motion for a continuance based upon the alleged previous violations of Father's due process rights. The Juvenile Court denied the motion, and the trial proceeded.

Father, incarcerated at the time of trial, testified. In 2003, when Aniston was first taken into DCS custody, Father was incarcerated on domestic violence charges. Father later was arrested again in 2004 on aggravated burglary charges. Father received a four year sentence and was paroled in 2005. Father quickly returned to jail on new charges in 2005. Father testified: "I was out twenty-eight days on parole. I did. I got out. I got drunk. I took a bunch of pills. I went and broke into a bunch of stores . . . . -- soon as I sobered up, I come and turned myself in." More legal trouble ensued for Father. Eventually, Father bonded out in 2007. Father later was pulled over while driving with a suspended license, and his bond was revoked. In 2010, Father attended a Bible-based program called "The Bristol Lighthouse" but was expelled after only eight days for dipping Skoal, a violation of the program's rules. Father returned to prison. Father testified that he formerly had a drug problem but that he had not used any drugs in four years.

The Children, meanwhile, have required extensive therapy and counseling. Chloe was in a Level 2 therapeutic foster home. Aniston spent around one year in a Level 4 mental health hospital. Owing to their special medical needs, previous attempts to place the Children in pre-adoptive homes have met with setbacks.

In October 2015, the Juvenile Court entered its final order terminating Father's parental rights to the Children, stating in part as follows:

**Ground III —Abandonment by Incarcerated Parent -Wanton Disregard (Applies to Father. . .).**

The Court finds that, at the time of the filing of the Department's petition, the father was incarcerated or had been incarcerated for much of the last four months prior to March 6, 2015. The record shows that he was incarcerated during the entirety of [ ] 2013 and 2014 and commitments to DCS' custody. He has been incarcerated for the bulk of the past eight years since 2006. He himself admits that he was involved in the girls' lives for about one year altogether; Aniston is twelve years old and Chloe is ten years old. His incarceration serves only as the triggering event; the Court has considered his pre-incarceration behavior which includes his multiple episodes of burglary, deception, and theft. He abused drugs and alcohol. As a parent he was basically "missing in action" (again, these are father's words). By his own testimony, he even violated rules of jails and prisons by abusing alcohol in jail and by using non-prescribed Suboxone. In the case of Suboxone, he testified that he used this over a 4-5 month period of time and it was within the last 4-5 years and prior to DCS filing its *Petition to Terminate Parental Rights*. He violated rules pertaining to contraband in prison and violated rules associated with parole and probation. He testified about being unsuccessfully discharged from a rehabilitation program in 2010 —"the Lighthouse." **By clear and convincing evidence, the requirements of Tenn. Code § 36-1-113(g)(1) and 36-1-102(1)(A)(iv) have been met;** and

**BEST INTEREST**

The Court finds that the facts and circumstances in this case warrant a finding of best interest by clear and convincing evidence. This Court carefully considered the factors as enumerated in Tenn. Code 36-1-113(i) and finds that eight of them are apparent by clear and convincing evidence. The Court notes the first factor in particular as weighing strongly in favor of finding that the State has met its burden of proof, namely:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian.

Pursuant to 36-1-113(i) and the associated case law such as *White v. Moody*, 171 S.W.3d 919 (Tenn. Ct. App. 2004) and *In Re Giorgianna H*, 205 S.W.3d 508 (Tenn. Ct. App. 2006), once a parent has been found to be unfit, the interests of the parent and the child diverge. The focus of the proceedings shifts to the best interest of the children. The children have been in foster care for the past year, but the father also testified that he has acted as a father to them for about one year of their total lives. In the case of Chloe . . . that means that the father has been involved in her life for less than 10% of her total life. In the case of Aniston . . . that means the father was involved even less than 10%. He does not have a meaningful relationship with the children. It is clear that it will take many months or years for father to be able to restore his life to the point where he will be able to parent the girls. He testified that when and if he gets out of jail he would rely on family, however; historically, they have not been able to help him.

The court found the testimony of Ms. Leonard and Ms. Anthony to be very helpful. They testified about the complex history of trauma and services that the girls have received and continue to receive. It is unlikely that [Father] would be able to parent the girls anytime in the near future. [Father] does not have a sober realization about what it would take to parent them given their significant challenges. In a letter to [Father], Aniston expressed her hope/desire to get a family "soon." Time is wasting and they need the opportunity to thrive. **By clear and convincing evidence, and pursuant to Tenn. Code § 36-1-113(i), the Court finds that it is in the best interest of the children to terminate the parental rights of [Father].**

Father timely appealed to this Court.

## Discussion

Although not stated exactly as such, Father raises the following single issue on appeal: whether the Juvenile Court erred in failing to grant Father's request for appointed counsel during the dependency and neglect proceedings and in refusing to transport him to court for those hearings despite his having filed motions with the court seeking both appointment of counsel and transport to court hearings. Father does not raise grounds for termination or best interest as issues on appeal, but we review those issues nevertheless.

-4-

We first address Father's issue regarding alleged procedural deficiencies in the dependency and neglect proceedings. A number of Tennessee cases stand for the proposition that dependency and neglect proceedings are separate and distinct from termination proceedings and that violations of a parent's due process rights in a dependency and neglect proceeding are remedied by the procedural protections afforded in termination proceedings. *See, e.g., In re: L.A.J., III*, W2007-00926-COA-R3-PT, 2007 WL 3379785, at *6 (Tenn. Ct. App. Nov. 15, 2007), *no appl. perm. appeal filed*; *In re: S.Y.*, 121 S.W.3d 358, 366 (Tenn. Ct. App. 2003). Father acknowledges the case law which seemingly contradicts his position, but he argues that his case is distinguishable for the following reasons: (1) Father, displaying initiative, filed a motion for appointment of counsel and his request summarily was dismissed by a letter from the Juvenile Court Clerk's Office stating that he was not entitled to counsel; and, (2) the adjudicatory hearing order entered by the Juvenile Court on June 18, 2014 made no findings as to Father and was entered before he was served properly, and that, therefore, he was unable to exercise a right to appeal. Father acknowledges that he was afforded the required procedural protections at the termination hearing.

We disagree with Father that the facts of the present case compel a different outcome from the applicable precedents. This Court, addressing a similar scenario in another case, stated: "[W]e hold that any violation of appellant's due process rights, and any violation of the Tennessee Rules of Juvenile Procedure that may have occurred at the dependent and neglect proceeding, was fully remedied by the procedural protections provided Young at the termination hearing." *In re: S.Y.*, 121 S.W.3d at 366. While dependency and neglect determinations ultimately may lead to a termination of parental rights, a dependency and neglect proceeding is separate and distinct from a termination proceeding.

Father fails to articulate how any alleged due process violations or deficiencies in the dependency and neglect proceedings in this case requires reversal of the order terminating his parental rights. The Juvenile Court found that the ground of wanton disregard was proven against Father and that termination of Father's parental rights was in the Children's best interest. Neither of these findings required the prerequisite of a dependency and neglect finding. If the termination of Father's parental rights hinged upon the dependency and neglect disposition, then perhaps Father's argument would be stronger. However, Father was not disadvantaged by any alleged deficiencies in the dependency and neglect proceeding. The ground upon which Father's parental rights were terminated, wanton disregard, was based upon Father's lengthy and uncontroverted criminal history and drug abuse. This evidence also was central to the Juvenile Court's best interest determination. It is unclear how Father, even had he been represented by the most capable counsel in the dependency and neglect proceeding, could have avoided the damning evidence which independently was elicited at his termination

proceeding. We hold that any alleged deficiencies in the dependency and neglect proceedings were remedied by the protections afforded Father by the termination proceeding, and that, in any event, Father was not disadvantaged by any alleged deficiencies.[2]

We next consider whether the Juvenile Court erred in finding by clear and convincing evidence that grounds existed to terminate Father's parental rights to the Children for abandonment by wanton disregard pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv). Our Supreme Court recently reiterated the standard of review for cases involving termination of parental rights stating:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions.[3] *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747 (1982); *In re Angela E.*, 303 S.W.3d at 250. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky*, 455 U.S. at 759. "Few consequences of judicial action are so grave as the severance of natural family ties." *Id.* at 787; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996). The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of "severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-

---

[2] As it is unnecessary to the resolution of this appeal, we need not and do not make any findings as to whether Father's due process rights actually were violated in the dependency and neglect proceeding.

[3] U.S. Const. amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). Similarly, article 1, section 8 of the Tennessee Constitution states "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof – clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

Tennessee statutes governing parental termination proceedings incorporate this constitutionally mandated standard of proof. Tennessee Code Annotated section 36-1-113(c) provides:

> Termination of parental or guardianship rights must be based upon:
>
> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

This statute requires the State to establish by clear and convincing proof that at least one of the enumerated statutory grounds[4] for termination exists and that termination is in the child's best interests. *In re Angela E.*, 303 S.W.3d at 250; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "The best interests analysis is

---

[4] Tenn. Code Ann. § 36-1-113(g)(1)-(13).

separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d at 254. Although several factors relevant to the best interests analysis are statutorily enumerated,[5] the list is illustrative, not exclusive. The parties are free to offer proof of other relevant factors. *In re Audrey S.*, 182 S.W.3d at 878. The trial court must then determine whether the combined weight of the facts "amount[s] to clear and convincing evidence that termination is in the child's best interest." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). These requirements ensure that each parent receives the constitutionally required "individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

Furthermore, other statutes impose certain requirements upon trial courts hearing termination petitions. A trial court must "ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child." Tenn. Code Ann. § 36-1-113(k). A trial court must "enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." *Id*. This portion of the statute requires a trial court to make "findings of act and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating [parental] rights." *In re Angela E.*, 303 S.W.3d at 255. "Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and convincing evidence establishes that termination of [parental] rights is in the [child's] best interests." *Id*. If the trial court's best interests analysis "is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order." *Id*. Appellate courts "may not conduct de novo review of the termination decision in the absence of such findings." *Id*. (citing *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 & n.15 (Tenn. Ct. App. 2007)).

### B. Standards of Appellate Review

---

[5] Tenn. Code Ann. § 36-1-113(i).

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re: Carrington H.*, No. M2014-00453-SC-R11-PT, 2016 WL 819593, ___ S.W.3d ___, at **10-12 (Tenn. Jan. 29, 2016) (footnotes in original but renumbered).

As pertinent, Tenn. Code Ann. § 36-1-113(g)(1) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1) (Supp. 2015). In pertinent part, Tenn. Code Ann. § 36-1-102 provides:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

-9-

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (Supp. 2015).

The Juvenile Court made detailed findings, quoted above, regarding the ground of wanton disregard. Father does not challenge this ground on appeal. The record on appeal more than amply supports the Juvenile Court's findings. Indeed, Father's own testimony at trial reflects his lengthy history of drug abuse and criminal activity. The evidence does not preponderate against the Juvenile Court's findings pertaining to wanton disregard. We find, as did the Juvenile Court, that the ground of wanton disregard has been proven against Father by the standard of clear and convincing evidence.

The final issue we address is whether the Juvenile Court erred in finding by clear and convincing evidence that termination of Father's parental rights is in the Children's best interest. Although Father does not challenge the Juvenile Court's best interest determination, we will address it.

Courts rely on the factors contained at Tenn. Code Ann. § 36-1-113(i) in making a best interest determination in parental rights termination cases. The evidence does not preponderate against the Juvenile Court's detailed findings as quoted above. Father has had a negligible role in the lives of the Children. Instead, Father has spent most of his time in and out of prison. Meanwhile, the Children have struggled and endured setbacks in their journey to a permanent home placement. Their best interest, however, certainly lies not with some possible future return to Father, who would essentially need to rebuild his life from scratch to have any hope of parenting the Children. These Children, especially with their special needs, cannot afford to wait for permanency. We find, as did the Juvenile Court, that the evidence is clear and

-10-

convincing that it is in the best interest of the Children for Father's parental rights to be terminated. In summary, we affirm the judgment of the Juvenile Court in its entirety.

## Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, James W., and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE