IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 11, 2005

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. F.S.B.

**Appeal from the Juvenile Court for Sullivan County**
**No. J28,226     James H. Beeler, Judge**

---

**No. E2004-01220-COA-R3-PT 0 FILED JANUARY 28, 2005**

---

The trial court terminated the parental rights of F.S.B. ("Father") with respect to his two minor children, K.L.B. (DOB: September 19, 1997) and S.L.B. (DOB: July 21, 1999). Father appeals, arguing, *inter alia*, that the evidence preponderates against the trial court's finding, stated to be by clear and convincing evidence, that grounds for termination exist. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

Murry C. Groseclose, Kingsport, Tennessee, for the appellant, F.S.B.

Paul G. Summers, Attorney General and Reporter, and Juan G. Villaseñor, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

**OPINION**

I.

In October, 2001, K.L.B. and S.L.B. (collectively "the children") came into the custody of the Department of Children's Services ("DCS"), following a finding that the children were residing with their mother, S.S.B. ("Mother"), in a condemned apartment with a vicious dog. At the time of the removal, Father was living in Virginia; he testified at trial that he had left his wife and children to go to Virginia because he and his wife "kept arguing."

On February 10, 2003, DCS filed a petition to terminate the parental rights of Father and Mother. The case was heard on January 14, 2004. On February 5, 2004, the trial court entered its

order, terminating the parental rights of Father and Mother to the children. From this order, Father appealed. Mother did not appeal.

Subsequently, DCS filed a motion before this court, seeking to vacate the trial court's final order as to Father and to remand the case to the trial court for the purpose of entering an order that contained specific findings of fact and conclusions of law, pursuant to Tenn. Code Ann. § 36-1-113(k) (Supp. 2004). On October 12, 2004, this court granted DCS's motion. One month later, the trial court entered an amended order, finding, by clear and convincing evidence, that grounds for terminating Father's parental rights existed and that termination was in the best interest of the children. Specifically, the court made the following findings:

> Here, the Court concludes that there is clear and convincing evidence to support grounds for termination of [Father's] parental rights to his children under Tenn. Code Ann. §§ 36-1-113(g)(1) and (g)(3)(A). In addition, the Court concludes, based on clear and convincing evidence, that termination of [Father's] parental rights is in his children's best interest. Each ground is discussed in turn.

> * * *

> [T]he Court concludes that [Father] willfully failed to support and to visit his children in the four-month period preceding the filing of DCS's petition to terminate his parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). The evidence is undisputed, based on [Father's] own admissions, that he failed to support his children in the relevant four-month period, and since the children have been in DCS's custody. While [Father] was gainfully employed during July to October 2002, and continued working in odd jobs between November 2002 and February 2003, he failed to provide any support for his children. Significantly, [Father] admitted that he had no reason for not working in 2001 and 2002. [Father] was not incarcerated during this period of time. [Father's] only reason for failing to support his children was that if he had provided support, his wife would have misused the funds. Although this could be the case, [Father] did not present any proof to support his bare assertion.

> In any event, the Court notes that parents have a duty to support their children. Tenn. Code Ann. § 34-1-102(a). Because [Father] willfully failed to fulfill his duty to support his children, choosing instead to leave his wife and children in a condemned apartment building with a vicious dog, [Father] committed abandonment. Tenn. Code Ann. § 36-1-113(g)(1).

* * *

The Court also concludes that termination of [Father's] parental rights is supported by clear and convincing evidence under Tenn. Code Ann. § 36-1-113(g)(3)(A). The children were removed on October 10, 2001, because they were without a proper guardian and they have remained in DCS's custody ever since. Further, the conditions which led to the children's removal still persist. The children were originally removed because [Father] abandoned his children due to marital problems. The undisputed proof at trial showed that [Father] left for Virginia and had previously left for Florida for similar reasons. During these times, [Father] simply left his children, failing to provide any support or to stay in contact with them. Notably, [Father] initially learned that DCS had custody of his children in July 2002, when he returned from Virginia. Yet, [Father's] dereliction continued and he failed to contact DCS until January 2, 2003, when he finally met with the DCS case manager for a permanency plan staffing. Following this meeting, however, [Father] again disappeared, despite numerous, albeit unsuccessful, attempts by DCS to contact him. In light of this proof, [Father's] lack of interest in his children is patently obvious.

In addition, there are other conditions which would subject the children to further abuse or neglect. [Father] admitted to engaging in serious criminal acts for which he received a substantial prison sentence of 11 months and 29 days. On January 12, 2003, [Father] was involved in an automobile accident in which he rear-ended another vehicle and fled the scene of the accident. [Father] was convicted [of] four counts of assault, driving with a suspended license, leaving the scene of an accident, and evading arrest. The Court notes that the "other condition" here is not [Father's] incarceration, but his underlying criminal acts, which would have left, once again, his children without a proper legal guardian.

Given [Father's] continued disinterest in his children, his failure to support them, and his criminal behavior, the Court concludes that it is unlikely that, the conditions which led to removal, or other conditions which would subject the children to further abuse, would be remedied at an early date. Finally, the Court finds that the continuation of the parent-child relationship greatly diminishes the children's chances of integrating into a safe, stable, and permanent home. As the undisputed proof showed, the children's behavior has dramatically improved since their placement with Lisa Lewis, their

foster mother. Moreover, Lewis manifested a clear wish to adopt the children, who have become part of her family and who address her as "mom."

For these reasons, the Court concludes that termination of [Father's] parental rights is warranted because he failed to remedy the persistent conditions in his life that prevented the children's return.

The court went on to make comprehensive findings related to the best interest of the children, which findings will be discussed later in this opinion.

II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness as to the trial court's factual findings, a presumption we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. ***Jahn v. Jahn***, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

III.

The law is well-established that "parents have a fundamental right to the care, custody, and control of their children." ***In re Drinnon***, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing ***Stanley v. Illinois***, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). This right, however, is not absolute and it may be terminated if there is clear and convincing evidence justifying termination under the pertinent statute. ***Santosky v. Kramer***, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." ***O'Daniel v. Messier***, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

Tenn. Code Ann. § 36-1-113(g) lists the grounds upon which parental rights may be terminated, and "the existence of any one of the statutory bases will support a termination of parental rights." ***In re C.W.W.,*** 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000). The issues raised in the pleadings, and the trial court's findings, cause us to focus on the following statutory provisions:

*Tenn. Code Ann. § 37-1-147 (2001)*

(a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

* * *

(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, . . . by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

* * *

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in [Tenn. Code Ann.] § 36-1-102, has occurred;

* * *

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

\* \* \*

*Tenn. Code Ann. § 36-1-102 (Supp. 2004)*

As used in this part, unless the context otherwise requires:

(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

\* \* \*

(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more that token payments toward the support of the child;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

IV.

Father raises three issues for our consideration: (1) whether the trial court erred in admitting into evidence certain hearsay testimony; (2) whether Father's due process rights were violated when he was not made a party to foster care reviews during the children's dependency and neglect proceedings; and (3) whether the trial court erred in finding the existence of grounds for terminating Father's parental rights. We will address each of these issues in turn.

A.

Father first contends that the trial court erred when it allowed two witnesses for DCS to testify about statements made to them by Mother concerning Father's alleged acts of physical abuse toward both Mother and the children. At trial, Father objected to the testimony on the basis that it constituted inadmissible hearsay under Tenn. R. Evid. 801 & 802. The trial court overruled the objections and allowed the witnesses to testify about what Mother had told them about the alleged physical abuse.

Assuming, without deciding, that it was error for the trial court to have admitted these out-of-court statements into evidence, there is absolutely nothing in the record to indicate that the trial court relied on these statements when deciding to terminate Father's parental rights. Indeed, the trial court terminated Father's rights on the basis of abandonment and failure to remedy persistent conditions – grounds that have nothing to do with any allegations of abuse. Accordingly, any such error is harmless error. *See* Tenn. R. App. P. 36(b).

B.

Father next asserts that his due process rights were violated when DCS failed to make him a party to the foster care reviews that took place during the children's dependency and neglect proceedings.

Our review of the record reveals that at no time did Father raise this issue before the trial court. The law is well-established that issues not raised before the trial court cannot be raised for the first time on appeal. ***State Dep't of Human Servs. v. Defriece***, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). However, assuming, for the sake of argument, that the issue was properly raised before the trial court, this Court has held that any violation of due process in dependency and neglect proceedings may be cured by a subsequent valid termination of parental rights proceeding. *See **In re S.Y.***, 121 S.W.3d 358, 366 (Tenn. Ct. App. 2003). Moreover, a review of the trial court's final order reveals that the court in no way relied upon any evidence from the dependency and neglect proceedings in deciding to terminate Father's parental rights. This issue is without merit.

C.

Father next contends that the trial court erred in finding that grounds existed for terminating his parental rights. We disagree.

In addressing this issue, Father specifically argues that there was no clear and convincing evidence that he abandoned his children. In support of this argument, Father states that DCS did not give him an opportunity to visit his children and that, because he did not have a job in the four months leading up to the filing of the petition to terminate, he had no income and therefore could not possibly pay child support. He argues that the evidence preponderates against the trial court's holding that his failure to support was intentional. With respect to Father's failure to visit, the trial

court found – by clear and convincing evidence – that Father had failed to visit his children in the four months preceding the filing of the petition to terminate. Indeed, the trial court specifically found that Father had not visited the children since October, 2001. While Father met with the children's DCS case worker on January 2, 2003, regarding the children's permanency plan, the case worker did not hear from him again, despite numerous attempts to contact him. While Father claims in his brief that he was unemployed for the entire four-month period preceding the filing of the petition, he admitted at trial that he was working "odd jobs" during those four months. However, he did not send any of the income earned from these "odd jobs" to support his children. In fact, the only reason that Father gave at trial for failing to support the children in the past was due to his concern that Mother would "misuse" the funds.

The evidence does not preponderate against the trial court's finding, by clear and convincing evidence, that Father abandoned the children. Further, while Father does not raise any issue with respect to the trial court's finding that Father failed to remedy persistent conditions, we find likewise that the evidence does not preponderate against the trial court's finding of this ground for termination. The evidence establishes a pattern of Father leaving his family due to disagreements with Mother and failing to show any interest in his children when he returned to town, even upon learning that the children were in state custody. In addition, Father committed serious crimes just one month after meeting with the DCS case worker about his children. Because of his crimes, Father was sentenced to serve two consecutive terms of 11 months, 29 days in jail. Based upon Father's obvious lack of interest in the children, as well as his criminal behavior, the trial court found that the evidence showed clearly and convincingly that Father had failed to remedy these persistent conditions. *See* Tenn. Code Ann. § 36-1-113(g)(3)(A). We hold that the evidence does not preponderate against these findings, and accordingly, we find that the trial court properly found grounds for terminating Father's parental rights.

V.

Finally, we conclude that the evidence contained in the record supports the trial court's finding that the termination of Father's parental rights is in the best interest of the child. The trial court summarized the factors pertaining to the children's best interest:

> As to the best interest prong, the Court concludes that several statutory factors under Tenn. Code Ann. § 36-1-113(i) are present in this case, which DCS proved by clear and convincing evidence. Accordingly, termination is in the children's best interest. First, [Father] has not made any adjustment of circumstance, conduct or conditions as evidenced by his complete non-involvement in this case. Tenn. Code Ann. § 36-1-113(i)(1). Even though [Father] learned in July 2002 that DCS had custody of his children, he did not meet with DCS officials until January 2003. Following this meeting, [Father], however, disappeared once again and failed to assume any responsibility to regain custody of his children.

Secondly, the children have not seen or heard from [Father] since, at least, October 2001 – approximately three years ago. This, of course, if not the children's fault. The proof was clear that [Father] failed to maintain regular visitation or contact with the children and that he failed to establish a meaningful relationship with them. Tenn. Code Ann. §§ 36-1-113(i)(3) & (4). In addition, [Father] failed to pay any child support since his children's removal. Tenn. Code Ann. § 36-1-113(i)(9).

Moreover, the effect of a change in caretakers and physical environment is likely to have a substantially negative impact on the children. Tenn. Code Ann. § 36-1-113(i)(5). The proof showed that, since removal, the children have never asked about their father, nor have they ever visited with him. Lewis, the foster mother, provided credible, unrebutted testimony that the children have substantially improved in their behavior and school performance since being with her. Lewis also expressed her wish to adopt both children. At this juncture, any change in environment for the children would be clearly detrimental to their well-being.

For these reasons, the Court concludes that termination of [Father's] parental rights is clearly in the children's best interest.

The evidence does not preponderate against these findings.

VI.

The judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of that court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, F.S.B.

_____
CHARLES D. SUSANO, JR., JUDGE