FILED

12/21/2016

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 2, 2016

**IN RE  LINETTE B.**

**Appeal from the Juvenile Court for Knox County**
**No. 32659     Timothy E. Irwin, Judge**

_____

**No. E2016-01316-COA-R3-PT**

_____

This is a termination of parental rights case.  Mother/Appellant appeals the termination of her parental rights on the grounds of: (1) failure to substantially comply with the requirements of the permanency plan; and (2) persistence of the conditions that led to the child's removal from Appellant's custody.  The trial court also found, by clear and convincing evidence, that termination of Appellant's parental rights is in the child's best interest.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Robin Gunn, Knoxville, Tennessee, for the appellant, Antoinette R.

Herbert H. Slatery, III, Attorney General and Reporter; and W. Derek Green, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I. Background**

The minor child at issue in this case, Linette B.,[1] was born in August of 2014.  The child's mother, Antoinette R. ("Mother," or "Appellant") and father, Lincoln B.

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

("Father"), were never married.  On or about September 19, 2014, Father filed a petition in the Juvenile Court for Knox County ("trial court"), seeking custody of the child. Father averred that the child was not receiving proper care and supervision with Mother. He stated that Mother suffers from bipolar disorder and leaves the child unattended when she cries.  He further averred that Mother gets angry and takes it out on the child. According to Father's petition, Mother was arrested for assault, vandalism, theft, and violation of parole.  On September 19, 2014, the trial court entered an interim order, granting temporary custody to Father pending hearing.  However, after the September 19, 2014 order was entered, both parents failed drug tests.  By order of September 19, 2014, the trial court appointed a guardian ad litem for the child.  By order of September 23, 2014, the trial court appointed an attorney for Mother.

Based on the parents' drug use, and having determined that there was no appropriate relative placement for the child, on October 1, 2014, the trial court entered a bench order, transferring custody of the child to the Tennessee Department of Children's Services ("DCS," or "Appellee"). By agreed order of February 2, 2015, the trial court adjudicated the child to be dependent and neglected "due to the substance abuse issues of the parents [the parents failed drug screens]; domestic violence issues between the parents; and the environmental neglect in the . . . home."  By the same order, the trial court dismissed, with prejudice, Father's petition for custody.

DCS worked with the parents to develop permanency plans for the child.  The initial plan was signed by Mother on October 23, 2014 and ratified by the trial court on December 3, 2014.  The permanency plan was revised on August 25, 2015 and ratified by the trial court on August 26, 2015.

After Linette was removed from Mother's custody, Mother sought treatment for her substance abuse issues.  As discussed in detail below, the record indicates that Mother had a seven-month period of sobriety during the pendency of this case.  At a December 3, 2014 review hearing, the trial court found that Mother was in substantial compliance with the requirements set out in the permanency plans.  In January 2016, DCS requested and obtained a hair follicle drug test, which was negative for all substances.  Mother's sobriety, however, was short lived.  On March 2, 2016, she tested positive for morphine and cocaine.  At that time, Mother was pregnant with Linette's sister, Skyla.  On April 18, 2016, Mother was drug tested by her obstetrician, and she was positive for methamphetamine and cocaine.  In May 2016, Mother gave birth to Skyla, who was born with Subutex in her system.  Mother did not have a prescription for the drug.  Skyla was immediately taken into DCS custody.  She and Linette are currently placed in the same foster home.

On May 12, 2016, DCS filed a petition to terminate Mother's parental rights to

Linette.[2]   As grounds for its petition, DCS averred: (1) that Mother had failed to substantially comply with her responsibilities under the permanency plans; and (2) that the conditions that led to the child's removal from Mother's home still persisted.  DCS also averred that termination of Mother's parental rights is in the child's best interest.

The trial court heard DCS's petition to terminate Mother's parental rights on June 21, 2016.  Although she was served with the petition to terminate her parental rights, Mother failed to answer or appear at the hearing.  By order of July 1, 2016, the trial court found that there was clear and convincing evidence to terminate Mother's parental rights to Linette on the grounds of: (1) failure to substantially comply with the requirements set out in the permanency plans; and (2) persistence of the conditions that led to the child's removal from Mother's custody.  The trial court also found, by clear and convincing evidence, that termination of Mother's parental rights was in the child's best interest. Mother appeals.

## II. Issues

Mother raises three issues for review, which we restate as follows:

1.  Whether there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of failure to substantially comply with her requirements under the permanency plans.

2.  Whether there is clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of persistence of the conditions that led to the child's removal from Mother's home.

3.  Whether there is clear and convincing evidence that termination of Mother's parental rights is in the child's best interest.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745

---

[2] DCS sought termination of Father's parental rights in a separate proceeding.  He is not a party to this appeal.

(1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the children's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the children's best interests must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

### IV. Grounds for Termination of Mother's Parental Rights

As noted earlier, the trial court relied on the following statutory grounds in terminating Appellant's parental rights: (1) failure to substantially comply with the requirements set out in the permanency plans, Tennessee Code Annotated Section 36-1-113(g)(2); and (2) persistence of the conditions that led to the child's removal, Tennessee Code Annotated Section 36-1-113(g)(3). Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied on by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In*

- 4 -

*re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review both of the foregoing grounds.

### A. Substantial Non–Compliance with the Permanency Plan

Appellant's parental rights were terminated on the ground of failure to substantially comply with her responsibilities as set out in the permanency plans. Tenn. Code Ann. § 36-1-113(g)(2). As discussed by this Court in *In re M.J.B.*, 140 S.W.3d 643 (Tenn. Ct. App. 2004):

> Terminating parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) requires more proof than that a parent has not complied with every jot and tittle of the permanency plan. To succeed under Tenn. Code Ann. § 36-1-113(g)(2), the Department must demonstrate first that the requirements of the permanency plan are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place, *In re Valentine*, 79 S.W.3d at 547; *In re L.J.C.*, 124 S.W.3d 609, 621 (Tenn. Ct. App. 2003), and second that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met. *In re Valentine*, 79 S.W.3d at 548-49*; In re Z.J.S.*, 2003 WL 21266854, at *12. Trivial, minor, or technical deviations from a permanency plan's requirements will not be deemed to amount to substantial noncompliance. *In re Valentine*, 79 S.W.3d at 548.

*Id*. at 656-57.

Of primary concern in the development of the permanency plans was Mother's drug use and mental health issues. To address these issues, Mother's responsibilities under the permanency plans included: (1) complete the court-ordered mental health assessment and address domestic violence issues; (2) complete the intensive outpatient treatment and any recommended aftercare and pass random drug screens to demonstrate sobriety; (3) maintain safe, suitable housing free of environmental hazards, domestic violence, drug abuse, and other risks to the child; (4) maintain regular visitation with the child; (5) maintain a legal source of income; and (6) pay child support.

Turning to the record, by the time the initial permanency plan was developed on October 23, 2014, Mother had completed an alcohol and drug assessment and was about to begin intensive outpatient treatment. Mother completed orientation at Cherokee in October of 2014; she began outpatient treatment approximately two weeks later. Mother was found to be in compliance with her drug treatment program in December of 2014.

However, a few weeks later, she was evicted from her Section 8 housing because of misrepresentations she made on her application. After she was evicted, she moved into Father's home. She and Father have a long history of domestic violence, which was one of the concerns addressed in the permanency plans. In fact, Mother has been arrested for domestic violence. Nonetheless, after moving into Father's home, Mother resumed outpatient treatment at New Beginnings. However, she and Father soon fell into their pattern of domestic violence, and Mother moved into a shelter. At this point, Mother resumed using marijuana. At a Child and Family Meeting with DCS, on May 28, 2015, Mother reported that she had her first clean drug screen in some time. Unfortunately, her sobriety was short lived. New Beginnings asked for a hair follicle test in June of 2015, but Mother refused, admitting that she had used pills "in April." In July of 2015, New Beginnings informed Mother that she needed a more intense program due to her relapse. To this end, New Beginnings referred Mother to Susannah's House, a faith-based alcohol and drug treatment program for mothers in recovery. The Susannah House program provides several services, including substance abuse counseling, mental health counseling, and medication management.

In August of 2015, Mother became pregnant with Skyla. In December of 2015, she graduated from New Beginnings, but continued treatment at Susannah's House. She remained without housing, but was attempting to enter a treatment program in Nashville, which would provide transitional housing. As late as January of 2016, her hair follicle drug test came back clean. However, the day after she received the results of the hair follicle test, she tested positive for cocaine and buprenorphine in a drug screen performed at Susannah's House. A few weeks prior to her positive drug screen, Mother had stopped attending individual therapy at Susannah's House, and she had also stopped taking her prescribed medication to treat her mental health concerns.

On April 19, 2016, she tested positive for methamphetamine and cocaine at a prenatal doctor's appointment. She did not disclose the results of this test to DCS; rather, she reported that she planned to begin treatment at Great Starts after the baby was born. When Skyla was born in May of 2016, both Mother and baby tested positive for Subutex, although Mother did not have a prescription for the drug. Skyla was diagnosed with neonatal abstinence syndrome. The baby would not eat and required a feeding tube. Skyla was removed and placed into foster care prior to her discharge from the hospital.

Mother did enter the Great Starts program on May 23, 2016. That evening she appeared to be suffering from withdrawal symptoms. She was agitated and anxious, pacing and yelling. Staff requested a drug test, which showed positive for cocaine, methamphetamine, opiates, oxycodone, benzodiazepines, and buprenorphine. Based on this drug screen, Mother was involuntarily discharged from the program and advised that she needed to attend a residential program to establish stability in her mental health and

to safely detox. Great Starts informed her that she could re-enter its program after detox. On June 1, 2016, Mother entered the detox program at Buffalo Valley; however, two days later, she left the program. At the time of the hearing on DCS's petition to terminate her parental rights, Mother was refusing to comply with drug and alcohol recommendations.

Concerning housing, at the time of the hearing, Mother was homeless. For much of the pendency of this case, Mother has stayed at Father's house, both with and without his permission. Mother was incarcerated for domestic violence from June until August of 2015. At progress hearings, the trial court informed Mother that, due to her volatile relationship with Father, if she continued to reside with him, it would be a barrier to regaining custody of the child. She explained that she could not leave Father. In December of 2015, while she was pregnant with Skyla (Father is Skyla's biological father), Mother reported that she had a new boyfriend, a man she had met on the internet. After Skyla's birth, Mother reported that she planned to move into a friend's house. This plan was not confirmed as Mother failed to appear at the hearing to testify as to her current living situation.

In reliance on many of the foregoing facts, the trial court found that Mother "has failed to comply in a substantial manner with those reasonable responsibilities set out in the permanency plan related to remedying the conditions which necessitate foster care placement." From the record, we conclude that the facts, as found by the trial court, are supported by the preponderance of the evidence and clearly and convincingly establish the elements necessary to terminate Appellant's parental rights on the ground of failure to substantially comply with the requirements of the permanency plan. Tenn. Code Ann. § 36-1-113(g)(2).

### B. Persistence of Conditions

Tennessee Code Annotated Section 36-1-113(g)(3) provides that termination of parental rights may be based upon persistence of conditions:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

> (B) There is little likelihood that these conditions will be remedied at an

early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home

*Id*. §36-1-113(g)(3); *see also* **In re S.Y**., 121 S.W.3d 358, 369 (Tenn. Ct. App. 2003). The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child*." **In re Arteria H.**, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010).

In the case of **In re Audrey S**., 182 S.W.3d 838 (Tenn. Ct. App. 2005), this Court held that, based upon the statutory text and its historical development, the ground of persistence of conditions found in Tennessee Code Annotated Section 36-1-113(g)(3) provides a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse. *Id.* at 872. As discussed above, the child was adjudicated to be dependent and neglected "due to the substance abuse issues of the parents [the parents failed drug screens]; domestic violence issues between the parents; and the environmental neglect in the . . . home."

In its order terminating Mother's parental rights, the trial court specifically found that

the child has been removed by order of this Court for a period of six (6) months; the conditions which led to her removal still persist; other conditions persist which in all probability would cause the child to be subjected to further abuse and neglect and which, therefore, prevent the child's return to the care of [Appellant]; there is little likelihood that these conditions will be remedied at an early date so that this child can be returned to [Appellant] in the near future; continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

Of primary concern in this case is Mother's drug use and mental health issues. There is indication that Mother's drug use and un-treated mental health issues have contributed to her long history of domestic violence with Father. Despite the fact that Mother has been arrested for domestic violence, she continues to return to Father's home. This arrangement inevitably leads to further altercations between them. Due to her drug

use and mental instability, Mother has been unable to procure her own housing. Accordingly, the initial problem with domestic violence and environmental neglect, which precipitated the child's removal from Mother's custody, still persists.

Furthermore, Mother's drug use remains a problem. As outlined above, despite participating in numerous treatment programs, Mother has been unable to maintain her sobriety. Given her history of relapse, it does not appear that her drug problem will be resolved at any near date. From the record, we conclude that the facts, as found by the trial court, are supported by the preponderance of the evidence and clearly and convincingly establish the elements necessary to terminate Appellant's parental rights on the ground of persistence of the conditions that led to the child's removal from Appellant's custody. Tenn. Code Ann. § 36-1-113(g)(3).

### V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit upon establishment of a ground for termination of parental rights, then "the interests of parent and child diverge." *In re Audrey S.*, 182 S.W.3d at 877. The focus shifts to the child's best interest. *Id*. Because not all parental conduct is irredeemable, "Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest." *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). "The child's best interest must be viewed from the child's, rather than the parent's, perspective." *White*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child. These factors include, but are not limited to:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

***

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

* * *

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

Tenn. Code Ann. § 36-1-113(i). This Court has noted that, "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877.

In finding that termination of Mother's parental rights is in the child's best interest, the trial court held that, "despite reasonable efforts by available social services agencies," Mother "has not made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in her home." The trial court further found that "lasting adjustment does not reasonably appear possible." The record supports the trial court's finding. As discussed above, Mother has been unable to remain sober. She has not procured adequate housing, and it appears that her mental health issues have not been adequately addressed.

Linette's foster parent testified that Linette has adjusted well to her current placement. The foster parents have biological children, and Linette is now "the middle of the pack," according to the testimony. After Skyla was born, she was also placed with this foster family, and she and Linette have formed a bond. Although the record indicates that Mother has maintained visitation with Linette, the record establishes that the child is well integrated into her foster home. Given Mother's continued instability in terms of both her mental health and her drug use, it is likely that a change in custody, at this point, would negatively affect the child's emotional and psychological wellbeing. From the record, we conclude that the facts, as found by the trial court, are supported by the preponderance of the evidence and clearly and convincingly establish that termination of

Mother's parental rights is in Linette's best interest.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's order, terminating Mother's parental rights. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed to the Appellant, Antoinette R. Because Antoinette R. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE