FILED
08/30/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 3, 2017

## IN RE MIRACLE M. ET AL.

**Appeal from the Juvenile Court for Shelby County**
**No. AA6223  Dan H. Michael, Judge**

_____

### No. W2017-00068-COA-R3-PT

_____

This is a termination of parental rights case. The trial court terminated Appellant Father's parental rights to two minor children. The trial court found that clear and convincing evidence supported termination based on the statutory grounds of abandonment by willful failure to support, abandonment by willful failure to visit, and persistence of the conditions that led to the children's removal to state custody. The trial court also found, by clear and convincing evidence, that termination of the Father's parental rights was in the children's best interests. Father appeals.[1] As to the ground of persistence of conditions, we conclude that the Department of Children's Services ("DCS") has not met its burden of proof, and therefore we reverse termination of Father's parental rights on this ground. The Court affirms the juvenile court's termination of Father's parental rights on the grounds of abandonment by willful failure to support and abandonment by willful failure to visit.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
### Reversed in Part, Affirmed in Part, and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

James Franklin, Jr., Memphis, Tennessee, for the appellant, Jeremiah M.

Herbert H. Slatery, III, Attorney General and Reporter; and Jordan K. Crews, Assistant Attorney General, for appellee, Tennessee Department of Children's Services.

---

[1] The children's mother's parental rights were also terminated; however, she has not appealed.

## OPINION

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jeremiah M. ("Father") is the legal father of Jerenikkia M. (d.o.b. October 2009) and the putative father of Miracle M. (d.o.b. July 2012) (together with Jerenikkia, "the Children"). [2]

On August 5, 2014, Tonya M. ("Mother") brought Jerenikkia and Miracle to the hospital for immunizations. Mother reported that Jerenikkia had not been to a doctor since 2010, and Miracle had not been to a doctor since she was born. Medical staff reported that Jerenikkia was severely underweight, severely developmentally delayed, behind in immunizations, and suffering from a reflux issue that had not been addressed. Mother also reported that, since January 2014, she had neglected to give Jerenikkia eye drops prescribed to treat the child's glaucoma. Jerenikkia also required a leg brace due to a deformity in her leg; Mother reported the child had not worn the brace in two years. Miracle was also severely underweight and developmentally delayed. Furthermore, the Children were dirty, smelled of urine, and were covered in insect bites.

On August 13, 2014, the juvenile court removed the Children from Mother's home due to medical neglect, malnourishment, and suspected child abuse. Father was incarcerated when the girls were initially placed into foster care and has an extensive arrest record dating back to 1984. Among other things, he has been arrested for domestic violence, burglary, malicious mischief, multiple DUIs, aggravated assault and battery, violation of child restraint laws, and felon in possession of a handgun. He currently has an income of $735.00 a month from Social Security disability.

The Children have remained in DCS custody since August 2014. Although Father was incarcerated when DCS originally took custody of the Children, Family Service Worker Tramaine Lewis contacted Father and sent him a letter informing him that the Children had been taken into protective custody. Ms. Lewis did not receive a response. It was not until February of 2015, at a Child and Family Team Meeting, that Ms. Lewis met Father. Thereafter, Ms. Lewis testified that she attempted to contact Father through his sister, and she wrote him letters in an effort to update him on the case.

In April 2015, the Children were adjudicated dependent and neglected due to environmental neglect, lack of supervision, nutritional neglect, and medical maltreatment. Father had a conference call with Ms. Lewis on July 9, 2015 to discuss a new permanency plan. Father testified that Ms. Lewis specifically informed him that his parental rights could be terminated if he did not exercise visitation with the Children

---

[2] In termination of parental rights cases, it is the policy of this Court to abbreviate the names of minor children and other parties in order to protect their identities.

during the next four months. Despite Ms. Lewis' admonition, Father still did not seek visitation with the Children. In fact, he repeatedly ignored Ms. Lewis' letters. While Father did attend some of Jerenikkia's medical appointments, he did not interact with the Children through therapeutic visitation. Nor did he provide any financial support. Indeed, Father admits that he has never provided financial support for the Children.

On November 17, 2015, DCS filed a petition to terminate Father's parental rights. The trial court heard the petition on December 8, 2016. By order of December 16, 2016, the trial court terminated Father's parental rights on the grounds of abandonment by willful failure to support, abandonment by willful failure to visit, and persistent of the conditions that led to the Children's removal to state custody. The trial court also found that termination of Father's parental rights was in the Children's best interests. Father appeals.

## II. ISSUES

Father raises the following issues on appeal, which we restate as follows:

1. Whether sufficient statutory notice was provided for the grounds of abandonment for failure to support and failure to visit?

2. Whether the trial court erred in finding persistence of conditions when the children were not removed from Father's home?

The Tennessee Supreme Court has directed this Court to consider the sufficiency of the trial court's findings with regard to each ground for termination and as to whether termination is in the child's best interest regardless of whether the parent challenges those findings on appeal. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016). Therefore, in addition to addressing Father's specific issues, we will also review the trial court's findings as to each of the grounds for termination.

## III. STANDARD OF REVIEW

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *Carrington H.*, 483 S.W.3d at 522. Although constitutionally protected, parental rights are not absolute. *Id.* at 522. Tennessee law upholds the State's authority to terminate parental rights when necessary to prevent serious harm to children. *Id.* A decision terminating parental rights is final and irrevocable. *See* Tenn. Code Ann. § 36-1-113. Therefore, parents are constitutionally entitled to fundamentally fair procedures in termination proceedings. *See Carrington H.*, 483 S.W.3d at 522.

In order to ensure fundamental fairness in termination proceedings, Tennessee law imposes a heightened standard of proof—clear and convincing evidence—for the parent's benefit. *See* Tenn. Code Ann. § 36-1-113(c)(1); *Carrington H.*, 483 S.W. 3d at 522. The clear-and-convincing-evidence standard ensures that the facts supporting the statutory grounds for parental rights termination are highly probable before the State terminates a parent's fundamental rights. *Carrington*, 483 S.W. 3d at 522.

A court may terminate a person's parental rights only if the party seeking termination establishes: (1) the existence of at least one statutorily enumerated ground and; (2) that termination of parental rights would be in the best interest of the child. *See* Tenn. Code Ann. § 36-6-113(c). DCS bears the initial burden of establishing the statutorily enumerated grounds for termination by clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010). Second, DCS must prove, by clear and convincing evidence, that the termination of the parent's rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *Angela E.*, 303 S.W.3d at 251.

An appellate court applies the standard mandated by Tennessee Rule of Appellate Procedure 13(d) when reviewing a trial court's findings in termination proceedings. *See Carrington H.*, 483, S.W.3d at 523; *Angela E.*, 303 S.W.3d at 246. First, we review the trial court's specific factual findings *de novo* on the record with a presumption of correctness unless the evidence in the record preponderates otherwise. Tenn. R. App. P. 13(d); *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). In light of the heightened burden of proof in termination proceedings, a reviewing court must then make its own determination as to whether the trial court's findings amount to clear and convincing evidence that the elements necessary to terminate parental rights have been established. *Taylor B.W.*, 397 S.W.3d at 112. Whether the facts are sufficient to support termination of parental rights is a conclusion of law, which this Court reviews *de novo* with no presumption of correctness. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (*citing In re Valentine*, 79 S.W.3d 539, 548 (Tenn. 2002)).

## IV. ANALYSIS

### SUFFICIENCY OF NOTICE

As an initial matter, Father alleges that DCS did not satisfy the notice requirements of Tennessee Code Annotated section 37-2-403(2)(B)(i), which provides, in pertinent part:

> (2)(A) The permanency plan for any child in foster care shall include a statement of responsibilities between the parents, the agency and the caseworker of such agency. Such statements shall include the responsibilities of each party in specific terms and shall be reasonably

related to the achievement of the goal specified in subdivision (a)(1). The statement shall include the definitions of "abandonment" and "abandonment of an infant" contained in § 36-1-102 and the criteria and procedures for termination of parental rights. Each party shall sign the statement and be given a copy of it. The court must review the proposed plan, make any necessary modifications and ratify or approve the plan within sixty (60) days of the foster care placement. The department of children's services shall, by rules promulgated pursuant to the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, part 2, determine the required elements or contents of the permanency plan.

(B)(i) The parents or legal guardians of the child shall receive notice to appear at the court review of the permanency plan and the court shall explain on the record the law relating to abandonment contained in § 36-1-102, and shall explain that the consequences of failure to visit or support the child will be termination of the parents' or guardians' rights to the child, and the court will further explain that the parents or guardians may seek an attorney to represent the parents or guardians in any termination proceeding. If the parents or legal guardians are not at the hearing to review the permanency plan, the court shall explain to the parents or guardians at any subsequent hearing regarding the child held thereafter, that the consequences of failure to visit or support the child will be termination of the parents' or guardians' rights to the child and that they may seek an attorney to represent the parents or guardians in a termination proceeding.

(ii) If the parents or guardians of the child cannot be given notice to appear at the court review of the permanency plan, or if they refuse or fail to appear at the court review of the permanency plan, or cannot be found to provide notice for the court review of the permanency plan, any agency that holds custody of the child in foster care or in any other type of care and that seeks to terminate parental or guardian rights based upon abandonment of that child under § 36-1-102, shall not be precluded from proceeding with the termination based upon the grounds of abandonment, if the agency demonstrates at the time of the termination proceeding:

(a) That the court record shows, or the petitioning party presents to the court a copy of the permanency plan that shows that the defendant parents or legal guardians, subsequent to the court review in subdivision (a)(2)(B)(i), has signed the portion of the permanency plan that describes the criteria for establishing abandonment under § 36-1-102, or

that the court record shows that, at a subsequent hearing regarding the child, the court made the statements to the parents or legal guardians required by subdivision (a)(2)(B)(i);

(*b*) By an affidavit, that the child's permanency plan containing language that describes the criteria for establishing abandonment under § 36-1-102 was presented by the agency party to the parents or guardians at any time prior to filing the termination petition, or that there was an attempt at any time to present the plan that describes the criteria for establishing abandonment under § 36-1-102 to the parents or guardians at any time by the agency party, and that such attempt was refused by the parents or guardians; and

(*c*) That, if the court record does not contain a signed copy of the permanency plan, or if the petitioning agency cannot present evidence of a permanency plan showing evidence of such notice having been given or an affidavit showing that the plan was given or that the plan was attempted to be given to the parents or guardians by the agency and was refused by the parents or guardians, and, in this circumstance, if there is no other court record of the explanation by the court of the consequences of abandonment and the right to seek an attorney at any time, then the petitioning agency shall file with the court an affidavit in the termination proceeding that describes in detail the party's diligent efforts to bring such notice required by subdivision (a)(2)(B)(i) to such parent or guardian at any time prior to filing the agency's filing of the termination petition.

Tenn. Code Ann. § 37-2-403.

In the first instance, Father did not timely raise the notice argument in the trial court. It is well established that issues not raised in the trial court cannot be raised for the first time on appeal. *See, e.g.*, *Correll v. E.I. DuPont de Nemours & Co.*, 207 S.W.3d 751, 757 (Tenn. 2006) (*quoting Simpson v. Frontier Mmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991)).

However, even if we assume, *arguendo*, that Father properly raised this issue in the trial court, the evidence does not support his contention. At the hearing on the petition to terminate his parental rights, Father was asked, "Did [Ms. Lewis] tell you that if you didn't get a visit in four months that your parental rights could be terminated?" Father responded, "Yes, she told me that [at the hearing in July 2015]." Father's position is

plainly contradicted by his own testimony. Accordingly, we conclude, even if the issue was not waived, Father, by his own testimony, received sufficient notice under the statute.

## GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

### A. Abandonment by Willful Failure to Visit and Willful Failure to Support

The trial court found, by clear and convincing evidence, that Father's parental rights should be terminated on the ground of abandonment by willful failure to pay support and willful failure to visit pursuant to Tennessee Code Annotated Section 36-1-113(g)(1) and Tennessee Code Annotated Section 36-1-102(1)(A)(i). In pertinent part, Tennessee Code Annotated Section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated Section 36-1-102 defines "abandonment," in relevant part, as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(i). In this case, the petition for termination of parental rights was filed on November 17, 2015. Therefore, the relevant period for purposes of abandonment is the four-month period immediately preceding the filing of the petition. Tenn. Code Ann. § 36-1-102(1)(A)(i).

In *In re Audrey S.*, this Court discussed willfulness in the context of termination of parental rights cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.... In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing ....
>
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863–64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted).

### 1.     Abandonment by Willful Failure to Support

Willful failure to support or to make reasonable payments towards support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Parents over the age of eighteen are presumed to be aware of their duty to support their children. Tenn. Code Ann. § 36-1-102(1)(H). For purposes of Tennessee Code Annotated Section 36-1-102(1)(A)(i), "token support" means support that, under the circumstances of the individual case, is insignificant given the parent's means. Tenn. Code Ann. § 36-1-102(1)(B). A parent willfully fails to support his or her child when he or she has the capacity to make a payment but makes no attempt to do so and does not possess a justifiable excuse. *Angela E.* 402 S.W.3d at 641; *see also In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (*quoting In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). A parent who has failed to make payments due to forces beyond his or her control has not abandoned his or her child. *Id.* Any attempt of a parent to rectify abandonment by resuming payments once a petition for termination has

been filed does not preclude DCS from seeking termination of parental rights. Tenn. Code Ann. 36-1-102(1)(F).

DCS has the burden to prove, by clear and convincing evidence, that, during the relevant period, Father: (1) had the ability to pay support; (2) did not pay more than token support and; (3) did not have a justifiable excuse for non-payment. *Angela E.*, 402 S.W.3d at 640. It is undisputed that Father has made no payments toward the support of the Children during the relevant time period. The question, then, is whether Father had the means to pay support. The record shows that, during the relevant period, Father had income of at least $735.00 per month. Accordingly, it appears that Father could have paid some amount of support. Concerning why he did not, Father testified, that he has never provided financial support for the Children because of "all of the stuff going on with bills and stuff like that." The record shows that he does have money to support his smoking habit. He admitted that he purchases a pack of cigarettes every two days. In view of the fact that Father has income sufficient to support his habit, we conclude, as did the trial court, that he has no justifiable excuse for failing to make child support payments. Accordingly, we conclude that the record contains clear and convincing evidence to support the trial court's finding that Father abandoned the Children by willful failure to support.

## 2. Abandonment by Willful Failure to Visit

The trial court also found that Father abandoned the Children by willfully failing to visit them during the four months preceding the filing of the petition to terminate his parental rights. A parent willfully abandons his or her children by failing to visit them if he or she does not engage in visitation with the children for the four (4) months preceding the filing of the petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). "Token visitation" means visitation that, under the individual circumstances of the case, "constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C). A parent does not willfully abandon his or her children by failing to visit them if his or her failure is excused by forces beyond their control. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). However, the parent—not DCS—has the duty to make every reasonable effort to arrange and insist on visitation with his or her children. *See In re S.Y.*, 121 S.W.3d 358, 369 (Tenn. Ct. App. 2003).

The trial court found that, during the relevant statutory period, Father willfully abandoned the Children by failing to visit them. By his own testimony, which was corroborated by several witnesses, Father admitted that he had not visited the Children during the relevant time period. Father asserts that his attendance at Jerenikkia's doctors' appointments constitutes visitation. However, Ms. Lewis repeatedly attempted to contact father through calls and letters. At most, we conclude, that Father's engagement at the

doctor's appointments was sporadic and cannot constitute more than token visitation. The Children's foster mother also testified that she gave Father her contact information and told him to call anytime to schedule a visit. During his testimony, Father admitted that Ms. Lewis told him specifically, at the hearing in July 2015, that if he did not visit the Children in the next four months his parental rights could be terminated. Nonetheless, Father failed to make any effort to spend time with the Children until after the petition to terminate his parental rights was filed. As noted above, "[a]bandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate [parental rights]." Tenn. Code Ann. § 36-1-102(1)(F). From our review of the record, and in view of the totality of the circumstances, we conclude that there is clear and convincing evidence in the record to support the trial court's finding that Father abandoned the Children by willful failure to visit.

### B. Persistence of Conditions

Tennessee Code Annotated Section 36-1-113(g)(3) defines persistence of conditions as follows:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010), overruled on other grounds by *In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015). "[A]s a threshold requirement for applicability of the ground of persistence of conditions in termination of parental rights cases, the child must not only have been adjudicated dependent and neglected, but he or she must also have been removed from the defendant parent's home." *In re Damien G. M*, No. E2016-02063-COA-R3-PT, 2017 WL 1733867

- 10 -

(Tenn. Ct. App. May 3, 2017) (*citing* Tenn. Code Ann. § 36-1-113(g)(3) ("The child has been removed *from the home of the parent ....*") (emphasis added)). From the record, it is clear that the Children were not, in fact, living in Father's home at the time they were removed to state custody. Father was incarcerated at that time, and all evidence indicates that the Children were removed from Mother's custody. In *In re Maria B.S.*, this Court was presented with a situation similar to the case at bar. In *Maria B.S.*, father's parental rights were terminated on a finding of persistence of conditions; however, the children had not, in fact, been removed from father's home because he was incarcerated at the time. In reversing the ground of persistence of conditions, we explained:

> We next address whether the Trial Court erred in finding and holding that clear and convincing evidence existed to terminate Father's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(3). Father argues that this ground could not be applied to his case as the Children were not removed from his home by order of a court. "The child has been removed from the home of the parent or guardian by order of a court...." Tenn. Code Ann. § 36-1-113(g)(3).

> We agree with Father as to this issue. Father was incarcerated at the time of the Children's birth. No one removed the Children from Father-he never had the Children in the first place. There is case precedent to support Father's position that, without removal from that parent's home, the ground of persistent conditions is inapplicable. *See In re T.L.*, No. E2004–02615–COA–R3–PT, 2005 WL 2860202, at *7 (Tenn. Ct. App. Oct.31, 2005), Rule 11 appl. perm. appeal denied Feb. 17, 2006; In re D.L.B., No. W2001-02245-COA-R3CV, 2002 WL 1838147, at *9 (Tenn. Ct. App. Aug.6, 2002), rev'd on other grounds, 118 S.W.3d 360 (Tenn. 2003); In re B.P.C., M2006-02084-COA-R3-PT, 2007 WL 1159199, at *7 (Tenn. Ct. App. April 18, 2007).

*In re Maria B.S.*, No. E2012-01295-COA-R3-PT, 2013 WL 1304616, at *11 (Tenn. Ct. App. March 4, 2013).

Based on the foregoing authority, we hold that the statutory ground of persistence of conditions is not applicable to Father under the facts presented here insomuch as the record contains no evidence to suggest that the Children were residing in Father's home at the time of their removal.

Although we reverse the trial court's finding as to the ground of persistence of the conditions that led to the Children's removal, in order to terminate parental rights, the moving party need only establish one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c). Because we have affirmed the remaining grounds that the trial court relied on in terminating Father's parental rights, i.e., abandonment by willful failure

- 11 -

to visit and support, we proceed to a review of the trial court's finding that termination of Father's parental rights is in the Children's best interests.

## BEST INTEREST ANALYSIS

When at least one of the statutory grounds for termination of parental rights has been established by clear and convincing evidence, the petitioner must next prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Angela E.*, 303 S.W.3d at 251. Once the court has determined that the parent is unfit based on clear and convincing evidence that one or more of the grounds for termination exists, the interests of the parent and child diverge, and the interests of the child become the court's paramount consideration. *In re Audrey S.*, 182 S.W.3d at 877. Because not all parental misconduct is irredeemable, the statutes governing termination of parental rights in Tennessee recognize that terminating the parental rights of an unfit parent will not always serve the best interests of the child. *Id.* If the interests of the parent and the child conflict, however, the court must always resolve the conflict in favor of the rights and best interests of the child. Tenn. Code Ann. § 36-1-101(d).

Tennessee Code Annotated section 36-1-113(i) sets forth a list of factors a court may consider when determining a child's best interest in parental rights termination proceedings. These factors include whether the parent has maintained regular visitation with the child, whether a meaningful relationship has otherwise been established, and whether the parent paid child support in the past. Tenn. Code Ann. § 36-1-113(i). Although courts should consider the statutory factors to the extent that they are relevant to the particular facts and circumstances of the case, the list is "not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d at 667. Depending on the circumstances of the case, the consideration of a single factor, or facts outside the statutory factors, may dictate the outcome of the court's analysis. *In re Audrey S.*, 182 S.W.3d at 878.

Here, the trial court made the following best interest findings:

1.      The children have been living in their pre-adoptive home since August 2014 and have considerably improved both developmentally and physically.

2.      The testimony indicated it would be detrimental to remove the children from their foster mother.

3.      The parents have not made adjustments to make it safe or in the children's best interest to be returned; the parents have not maintained

- 12 -

regular visitation; a meaningful relationship has not otherwise been established; the conditions of the parents' homes are not healthy and safe for the children.

At trial, Father testified that he wants custody, but he admitted that he is concerned about his own ability to care for the children. Due to a lack of contact, it is clear that Father has no meaningful relationship with the Children. In fact, both the Children's foster mother and Ms. Welsh, the resource coordinator at Omnivision, testified that the Children are upset and stressed after they see their Father. Specifically, the foster mother testified that Miracle "shuts down" after her visits with Father and reverts to "babbling" instead of speaking like a child her age. Ms. Welsh supervised a visit with Father and the Children on October 19, 2016. She testified that he was late and brought cupcakes, which he knew Jerenikkia was not allowed to eat because of digestive problems. Despite the social worker's objections, Father allowed Jerenikkia to eat six cupcakes, which caused the child to soil herself. Father laughed when Ms. Welsh told him not to give Jerenikkia so many cupcakes and sent Jerenikkia to the bathroom with his adult daughter when she soiled herself. When the social worker left the room, she returned on multiple occasions to find Jerenikkia hitting her head against the wall and Father ignoring her.

Furthermore, Father has not demonstrated that he has the ability to properly care for Children. As discussed in detail above, he has never paid support. Furthermore, when in light of the fact that he has no driver's license, Father was asked how he would get the children to medical appointments, he stated that he has been "working on it" (i.e. getting a license) for eight years, and that he had been driving without one. Father ultimately responded that he would try to get a ride from relatives or catch the "Medicaid Cab." At trial, Father did not know the names of the Children's doctor, the name of their school, their grades, or the correct year of Jerenikkia's birth.

The record shows that the children have a strong emotional bond with their foster mother who intends to adopt them as soon as possible. The foster mother takes care of the children and ensures they attend all necessary medical appointments. A change of caretakers and physical environment would likely have a negative effect on the children's emotional, psychological, and medical conditions. Tenn. Code Ann. § 36-1-113(i)(5). From the record, we conclude there is clear and convincing evidence to support the trial court's findings that termination of Father's parental rights is in the Children's best interests.

## V. CONCLUSION

For the forgoing reasons, we reverse the trial court's termination of Father's parental rights on the ground of persistence of the conditions that led to the Children's removal to state custody. We affirm the trial court's termination of Father's parental rights on the grounds of abandonment by willful failure to visit and support and its

determination that termination of Father's parental rights is in the Children's best interests. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Jeremiah M. Because Jeremiah M. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE