IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2019

## IN RE MADDOX G.

**Appeal from the Chancery Court for Henderson County**
**No. 26715     James F. Butler, Chancellor**

———————————————————

### No. W2018-01115-COA-R3-PT

———————————————————

This is a termination of parental rights case.  The trial court terminated father's parental rights on the grounds of abandonment by willful failure to support and abandonment by willful failure to visit.  With respect to the former ground, we reverse, finding insufficient evidence to support a finding that Father had the ability to pay child support.  However, we affirm the latter ground, finding ample evidence that father had failed to exercise his visitation rights for over two years prior to the filing of the termination petition.  We further find that termination of father's parental rights is in the best interest of the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**
**in Part, Affirmed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

John Andrew "Andy" Anderson, Lexington, Tennessee, for the appellant, Joseph G.

Howard F. Douglass, Lexington, Tennessee, for the appellees, Zachary T., and Natalie T.

### OPINION

#### BACKGROUND AND PROCEDURAL HISTORY

Joseph G. ("Father") and Natalie T. ("Mother") have known each other since they were freshmen in high school, during which time they dated periodically.[1]  After high school, Father attended college in Nashville, and Mother married Dustin L.  Sometime in 2006, Mother and Father became reacquainted in Nashville and resumed their prior relationship.  Not long after, Mother moved to Nashville with the hope of attending

_____

[1] In cases involving minor children, it is this Court's policy to redact names of persons involved sufficient to protect the identities of the children.

college, at which point Mother and Father moved in with Father's brother. It was during this time that Mother became pregnant and gave birth to Maddox G. ("the Child") on March 24, 2007. After the Child was born, Mother and Father moved out of Father's brother's home and into a one bedroom apartment in Nashville. Mother and Dustin L. divorced on May 24, 2007.[2] Mother and Father, however, never married.

In late 2007 or early 2008, Mother, Father, and the Child moved back to West Tennessee to live with Father's mother. They remained there until the summer of 2010, when Mother and Father separated. According to Mother, the separation was brought about by Father's drug abuse, verbal abuse, and physical abuse. According to Father, he and Mother "kept getting into it." Father testified that the situation climaxed on an afternoon when he arrived home and found Mother passed out in a recliner, prescription drugs missing, and the Child unsupervised with crayon and marker markings on his body and on the walls. When Mother came to, an altercation ensued, as did a second one the following night, at which point Father called law enforcement. Father did not press charges against Mother and was advised to stay elsewhere for the remainder of the night. Father and Mother have not lived together since that night, and the Child remained in Mother's custody.

Mother and Zachary T. ("Stepfather") began dating in July 2011 and married in July 2012. Soon after Mother and Stepfather were married, Father filed a petition in the Henderson County Juvenile Court ("the juvenile court") in order to establish visitation rights. On September 26, 2012, the juvenile court entered a parenting plan, which provided, among other things, that Father's visitation was to be supervised by the Child's paternal grandparents and that both Mother and Father would submit to a drug screening within twenty-four hours if requested by the other party. The court also ruled that Father's visitation rights would be terminated if he failed a drug screen. The parenting plan established the residential parenting schedule, which allotted Mother 285 days and Father 80 days of custody, as well as Father's child support obligation, which was set at $261.00 per month. Neither Mother nor Father took any legal action to modify the parenting plan after its entry.

On October 28, 2015, Mother and Stepfather filed a petition in the Henderson County Chancery Court ("the trial court") for adoption of the Child and termination of Father's parental rights. In the petition, Mother and Stepfather alleged that Father had abandoned the Child by his willful failure to visit and willful failure to support the Child and that termination of Father's parental rights was in Maddox G.'s best interest. They also alleged that they had had physical custody of the Child since before their marriage in 2012 and that the Child had been fully integrated into their family. A hearing on the matter was held on June 29, 2017. On May 17, 2018, the trial court entered an order

---

[2] Father's paternity was established by a DNA test. On January 10, 2008, the Henderson County Chancery Court issued an order establishing Father as the biological father of the Child.

terminating Father's parental rights to the Child on both grounds alleged by Mother and Stepfather and upon a finding that termination of Father's parental rights was in the Child's best interest. The order also granted Mother and Stepfather's petition for adoption of the Child. Father timely appealed on June 15, 2018.

## ISSUES PRESENTED

There are two dispositive issues on appeal, which we restate as follows:

1. Whether there is clear and convincing evidence to support at least one of the two grounds for termination of Father's parental rights.
2. If at least one ground exists for termination, whether there is also clear and convincing evidence to support the trial court's determination that termination of Father's parental rights is in the Child's best interests.

## STANDARD OF REVIEW

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*.

In view of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

### GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

As noted earlier, the trial court relied on two statutory grounds in terminating Father's parental rights: (1) abandonment by willful failure to support and (2) abandonment by willful failure to visit. Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed the appellate courts to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review each of the foregoing grounds on which the trial court relied in terminating Father's parental rights.

The trial court found, by clear and convincing evidence, that Father's parental rights should be terminated on the ground of abandonment by willful failure to pay support and by willful failure to visit pursuant to Tennessee Code Annotated section 36-1-113(g)(1) and Tennessee Code Annotated section 36-1-102(1)(A)(i). In pertinent part, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the

subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). In this case, the petition for termination of parental rights was filed on October 28, 2015. Therefore, the relevant period for purposes of abandonment is the four-month period immediately preceding the filing of the petition. *Id.*

In *In re Audrey S.*, this Court discussed willfulness in the context of termination of parental rights cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months . . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing . . . .
>
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863–64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted).

### A. Abandonment by Willful Failure to Support

The Trial court found that Father had willfully failed to support or make reasonable payments toward the support of the Child during the relevant four-month period. Willful failure to support or to make reasonable payments towards support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the

support of the child." Tenn. Code Ann. § 36-1-102(1)(D).[3] The question of willfulness is a question of law. *See In re Angela E.*, 402 S.W.3d at 640. A parent willfully fails to support his or her child when he or she has the capacity to make a payment but makes no attempt to do so and does not possess a justifiable excuse. *In re Angela E.*, 402 S.W.3d at 641; *see also In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). Parents over the age of eighteen are presumed to be aware of their duty to support their children. Tenn. Code Ann. § 36-1-102(1)(H). However, a parent who has failed to make payments due to forces beyond his or her control has not abandoned his or her child. *In re Angela E.*, 402 S.W.3d at 641. In making a willfulness determination, the courts must review a parent's means, which includes both income and available resources for purposes of support. *Id.*

Here, Mother and Stepfather have the burden to prove by clear and convincing evidence that, during the relevant four-month period, Father: (1) had the ability to pay support; (2) did not pay more than token support; and (3) did not have a justifiable excuse for non-payment. *Id.* at 640. The record shows that Father made a single $40.00 payment towards the support of the Child during the relevant statutory period.[4] Considering the parenting plan set Father's child support obligation at $261.00 per month, the question, then, is whether Father had the means to pay support and, thus, whether his failure to pay such support was willful.

Father testified that, during the relevant four-month period, he was unemployed and could not find employment because he did not have a valid driver's license. The trial court found—and Father admitted—that he had lost his driver's license because he had failed to pay child support. According to the trial court, this was not a sufficient excuse for Father's failure to pay no more than $40 during the relevant four-month period. While the record supports the trial court's finding that Father had lost his driver's license due to his failure to pay child support, Mother and Stepfather did not present any evidence regarding Father's financial means, expenses, or obligations during the relevant four-month period. Mother provided only the following testimony when asked about Father's employment status during the relevant four-month time period:

> A: I guess he has [been employed].
> Q: Well—
> A: He hasn't held a steady job. He's had jobs or got a job for show for court and then quit.
> . . . .

---

[3] For purposes of Tennessee Code Annotated section 36-1-102(1)(A)(i), "token support" means support that, under the circumstances of the individual case, is insignificant given the parent's means. Tenn. Code Ann. § 36-1-102(1)(B).

[4] According to Father, he was able to make this single $40 payment "by cleaning up my brother's house where he was living and cleaning out his ADT work van that he was driving at the time."

Q: Do you have any knowledge about whether he was seeking employment?
A: I don't know what he's been doing.
. . . .
Q: Do you know any facts about or any other circumstances about [Father's] current employment or his financial situation?
A: I do not know where he is employed.

In making a willfulness determination, the courts must review a parent's means, which includes both income and available resources for purposes of support. Specifically, this Court has noted:

> It is axiomatic that in order to establish the ground of abandonment by willful failure to support by clear and convincing evidence, the party seeking termination must generally submit . . . evidence regarding [the parent's] employment, income, [or] other non-monetary assets as well as the parent's expenses during the four-month period.

*In re Preston L.*, No. M2016-02338-COA-R3-PT, 2017 WL 4315356, at *5 (Tenn. Ct. App. Sept. 27, 2017) (internal quotations omitted). Here, the record contains insufficient evidence of Father's income, expenses, or available resources during the relevant time period. Without this information, we are unable to determine, by clear and convincing evidence, whether Father had the capacity to provide support. As this Court has stated, "[i]t is not enough for a petitioner to 'simply prove that [a parent] was not disabled during the relevant timeframe' and therefore assume that she was capable of working and paying child support." *In re Noah B.B.*, No. E2014-01676-COA-R3-PT, 2015 WL 1186018, at *9 (Tenn. Ct. App. Mar. 12, 2015) (quoting *In re Josephine E.M.C.*, No. E2013-02040-COA-R3-PT, 2014 WL 1515485, at *18 (Tenn. Ct. App. Apr. 17, 2014)). Similarly, here, it is not enough for Mother and Stepfather to simply assert that Father was unemployed during the relevant four-month period and assume that he was capable of working and paying child support.

Moreover, although Father was unemployed during the relevant four-month period, according to his testimony, the record reflects that he was actively seeking employment:

Q: [D]uring that four-month time period, do you remember any specific applications you made at least during that specific time?
A: During that specific time, I was applying online at Kenworth, TAG Truck Center, all the major shops in Jackson. I applied at the Volvo Mack Truck Center down there. I applied at all of them.
Q: And any job offers?
A: No.

Thus, because the record does not contain clear and convincing evidence that Father had the capacity to pay support during the four months preceding the petition, and because the record shows that Father was allegedly actively applying for jobs during this period, we find that Father's failure to pay support was not willful.[5]  Accordingly, we vacate the trial court's finding regarding this ground for termination.

### B.  Abandonment by Willful Failure to Visit

The trial court also found that Father abandoned the Child by willfully failing to visit him during the four months preceding the filing of the petition to terminate his parental rights.  A parent willfully abandons his or her child(ren) by failing to visit them if he or she fails to engage in more than mere token visitation with the children for the four months preceding the filing of the petition to terminate parental rights.  Tenn. Code Ann. § 36-1-102(1)(A)(i).  "Token visitation" means visitation that, under the individual circumstances of the case, "constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child."  Tenn. Code Ann. § 36-1-102(1)(C).

By his own testimony, which was corroborated by the testimony of Mother and Stepfather, Father admitted that he had not visited the Child during the relevant time period.  In fact, Father admitted that he had not seen the Child in a visitation setting for at least two years prior to the filing of the petition to terminate his parental rights:

> Q: [Father], when was the last time you saw your son in a visitation setting?
> A: It was in – I want to say it was Christmas.  Well, no.  It's been a long time.  A long time.  I think the last time I remember was right near Christmas of 2012 or – I think it was 2013 Christmas[.]

> Father, however, maintains that his failure to exercise his visitation rights was Mother's fault:
> [Mother] would never answer my calls, return my text and every time I would try to call and text or – even one time when I did get her on the phone, she said, well, if you want to see [the Child], you're going to have to come to my and [Stepfather's] house.

---

[5] We must note that the scope of our ruling on this issue is limited and is based solely on a lack of proof in the record before the trial court.  The burden to prove abandonment by willful failure to support rested squarely on Mother and Stepfather as the petitioners.  In a termination proceeding, we cannot fault a parent for the absence of evidence regarding his or her financial situation.  Moreover, the burden is not on the parent to demonstrate an inability to pay; rather the burden is on the petitioner to prove by clear and convincing evidence that the parent had the capacity to pay, made no attempt to do so, and had no justifiable excuse for not doing so.  *See In re Angela E.*, 402 S.W.3d at 641.  Keeping in mind the heavy burden necessary to interfere with a fundamental constitutional right, the evidence offered by Mother and Stepfather was simply insufficient to show that Father's failure to support the Child was willful.

The question, then, is whether Mother's actions constituted a significant restraint on Father's right to visitation such that his failure to visit cannot be deemed willful.

As stated previously, "a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *In re Audrey S.*, 182 S.W.3d at 864. A parent does not willfully abandon his or her children by failing to visit them if his or her failure is excused by forces beyond their control. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). Such forces must amount to a "significant restraint of or interference with" the parent's efforts to visit or support the child. *In re Ella M.I.*, No. M2013-01543-COA-R3-PT, 2014 WL 1778275, at *3 (Tenn. Ct. App. Apr. 30, 2014). However, the parent whose rights are subject to termination nevertheless has the duty to make every reasonable effort to arrange and insist on visitation with his or her children. *See In re S.Y.*, 121 S.W.3d 358, 369 (Tenn. Ct. App. 2003).

The trial court found no such restraint significant enough to justify Father's failure to visit for over a period of years, let alone the relevant statutory four-month period. We agree. The record shows that, during the relevant statutory period, Father was not involved at all in the Child's life. Even if Mother refused all of Father's attempts at communication regarding his visitation rights, Father never attended school events, baseball or soccer games, or doctor appointments. Father also never made any filing with the trial court seeking enforcement of his visitation rights. Moreover, despite Father's failure to do so, Father's mother has maintained a strong relationship with the Child and has seen him on numerous occasions. We find no evidence showing that Father made any reasonable effort to maintain visitation with the Child, nor have we discovered any forces beyond his control that would explain his failure to do so. Accordingly, we affirm the trial court's finding, by clear and convincing evidence, that Father abandoned the Child under Tennessee Code Annotated section 36-1-102(1)(A)(i) by willfully failing to visit.

## BEST INTERESTS

When at least one of the statutory grounds for termination of parental rights has been established by clear and convincing evidence, the petitioner must next prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Angela E.*, 303 S.W.3d at 251. Once the court has determined that the parent is unfit based on clear and convincing evidence that one or more of the grounds for termination exists, the interests of the parent and child diverge, and the interests of the child become the court's paramount consideration. *In re Audrey S.*, 182 S.W.3d at 877. Because not all parental misconduct is irredeemable, the statutes governing termination of parental rights in Tennessee recognize that terminating the parental rights of an unfit parent will not always serve the best interests of the child. *Id.* If the interests of the parent and the child conflict, however, the court must always

resolve the conflict in favor of the rights and best interests of the child. Tenn. Code Ann. § 36-1-101(d).

Tennessee Code Annotated section 36-1-113(i) sets forth a list of factors a court may consider when determining a child's best interest in parental rights termination proceedings. Some of these factors include whether the parent has maintained regular visitation with the child, whether a meaningful relationship has otherwise been established, and whether the parent paid child support in the past. Tenn. Code Ann. § 36-1-113(i). Although courts should consider the statutory factors to the extent that they are relevant to the particular facts and circumstances of the case, the list is "not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of the case, the consideration of a single factor, or facts outside the statutory factors, may dictate the outcome of the court's analysis. *In re Audrey S.*, 182 S.W.3d at 878.

In its order terminating Father's parental rights, the trial court made numerous findings concerning the Child's best interests, as reproduced here in relevant part:

> The testimony is that from both sides that the child does not have any meaningful relationship with the father . . . .
> . . . . There was a relationship between [Father] and his child, but he didn't water that and he let that go and let it go too long, and it's too late now to redeem that relationship.
> . . . .
> The child is now 10 years old. The relationship essentially ended several years ago, and the child now sees stepfather as his father. The child is too young to really know why all this happened, but there is no testimony before the Court that the child longs for [Father], misses [Father], cries because he hadn't seen [Father].
> . . . .
> The mother and the stepfather have a great relationship with the child and that's un-rebutted, and . . . it would have a detrimental effect on his emotional well-being and his psychological well-being to now cast him out of where he is and back into a relationship with someone who the child does not know.

After our review of the record and the relevant factors listed in Tennessee Code Annotated section 36-1-113(i), we agree with the trial court's findings and conclude that there is clear and convincing evidence that termination of Father's parental rights is in the Child's best interests. Aside from Father's willful failure to maintain a meaningful relationship with the Child, the record shows that Mother and Stepfather have raised the

Child together since 2011, and both have a very strong relationship with the Child. Mother testified that "[Stepfather] is basically the only daddy that [the Child] has known[,]" and the evidence in the record overwhelmingly supports this statement. Stepfather and the Child play sports together; Stepfather and the Child go hunting and fishing together; Stepfather taught the Child how to ride a bike. Father, on the other hand, has not done any of these things and, accordingly, has established no meaningful relationship with the Child. The record also shows that the Child has a strong relationship with his younger brother, the son of Mother and Stepfather. In light of the foregoing, we are satisfied that the record contains clear and convincing evidence that terminating Father's parental rights is in the Child's best interests.

### CONCLUSION

For the foregoing reasons, although we reverse the trial court's order with respect to the ground of abandonment by failure to provide child support, we conclude that clear and convincing evidence supports the remaining ground of abandonment by failure to visit, and we further conclude that clear and convincing evidence supports the trial court's determination that termination of Father's parental rights to the Child is in the Child's best interests.

_____
ARNOLD B. GOLDIN, JUDGE